E
X
H
I
B
I
T

A

EXHIBIT A

**IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA**

TATIANA EASTMAN,
individually, and on behalf of
all others similarly situated,

        Plaintiff,

v.

UNITED PARKS AND RESORTS INC.,
a Delaware corporation,

        Defendant.

_____/

CLASS ACTION

DEMAND FOR JURY TRIAL

**CLASS ACTION COMPLAINT**

Plaintiff, TATIANA EASTMAN ("Plaintiff") on behalf of herself and all others similarly situated, alleges the following based upon personal knowledge, upon information and belief, and the investigation of the undersigned counsel as to all other matters, and brings this class action against Defendant, United Parks and Resorts Inc. ("Defendant"), as follows:

## I.    NATURE OF THE ACTION

1.    This Complaint seeks redress for a class of persons who visited one of Defendant's amusement parks and were unlawfully charged a 5% surcharge when making a payment with a debit or credit card.

2.    Defendant is a theme park and entertainment company that owns or licenses a diverse portfolio of brands, including SeaWorld®, Busch Gardens®, Discovery Cove, Sesame Place®, Water Country USA, Adventure Island, and Aquatica® .

3.    Defendant's parks are *cashless*. Patrons, like Plaintiff, can only make payments using a debit or credit card.

4.      Upon making a payment at one of Defendant's parks, consumers are charged an additional and undisclosed 5% surcharge.

5.      The surcharge is not disclosed at the point of sale of any park, nor on Defendant's or its affiliates' websites.

6.      The surcharge is deceptive and unlawful under Florida law.

7.      In addition, the surcharge is contrary to the Durbin Amendment, passed as part of the Dodd-Frank Act, because it exceeds the interchange fee caps on debit card transactions introduced by the statute.

8.      The surcharge further violates the merchants' rules of the major credit and debit card companies because it exceeds the surcharge caps for debit and credit card transactions imposed by the merchants' agreements.

9.      As a result of this unlawful surcharge, Defendant profited at the expense of its patrons.

10.     In some instances, a merchant may be able to charge an additional fee to cover the costs of processing a credit card transaction. This is often referred to as a convenience fee. Convenience fees are typically an issue when credit cards are not the standard payment option. However, in the instant case, there is nothing convenient about the additional charge associated with Plaintiff's and the class members' transactions because card payment is not a more convenient payment method chosen by the consumers. Rather, it is the only payment method accepted at Defendant's cashless parks.

**A.      Introduction to the Florida Deceptive and Unfair Trade Practices Act.**

11.     The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) is a consumer protection law intended to protect "the consuming public and legitimate business enterprises from

2

those who engage in unfair methods of competition or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.212(2).

12. One can violate FDUPTA in one of two ways: a "traditional" violation or a "per se" violation.

13. "In order to prevail under a claim for a traditional FDUPTA violation, Plaintiff must establish the following: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages." *Barry's Cut Rate Stores Inc. v. Visa, Inc.*, No. 05MD1720MKBJO, 2019 WL 7584728, at *5 (E.D.N.Y. Nov. 20, 2019) (collecting cases).

14. "A 'deceptive act or unfair practice' may be found when 'there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" *Id.* (quoting *Sundance Apartments I, Inc. v. General Elec. Capital Corp.*, 581 F.Supp.2d 1215, 1220 (S.D.Fla.2008).

15. In contrast, a "per se violation of FDUPTA stems from the transgression of '[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition or unfair, deceptive, or unconscionable acts or practices.'" *Blair*, 2012 WL 868878, at *2–3.

**B.    Introduction to the Durbin Amendment.**

16. "In 2010, the Dodd-Frank Wall Street Reform and Consumer Protection Act, which included the Durbin Amendment, was signed into law, and required the Federal Reserve to issue rules limiting the banks' practice of issuing debit cards that were compatible with only the issuer's networks." *Barry's Cut Rate Stores Inc. v. Visa, Inc.*, No. 05MD1720MKBJO, 2019 WL 7584728, at *5 (E.D.N.Y. Nov. 20, 2019).

17. "In addition, the Durbin Amendment *'limited the interchange fee that issuing banks could charge for debit card purchases*, and allowed merchants to discount debit card

3

purchases relative to credit card purchases,' and also permitted merchants 'to place minimum-purchase amounts of up to [ten dollars] on [c]redit-[c]ard transactions,'" *Id.* quoting *Interchange Fees II*, 827 F.3d at 229 (emphasis added).

18.    Following major litigation proceedings throughout the country, credit and debit card companies agreed to change their rules to allow merchants to impose surcharges to consumers within certain limits.

19.    "The reforms included, among other things, 'Visa and MasterCard rule modifications to permit merchants to surcharge on Visa- or MasterCard-branded credit card transactions at both the brand and product levels'; '[a]n obligation on the part of Visa and MasterCard to negotiate interchange fees in good faith with merchant buying groups'; '[a]uthorization for merchants that operate multiple businesses under different 'trade names' or 'banners' to accept Visa and/or MasterCard at fewer than all of its businesses'; and '[t]he locking-in of the reforms in the Durbin Amendment [of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010] and the DOJ [United States Department of Justice] consent decree with Visa and MasterCard, even if those reforms are repealed or otherwise undone.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 21 (E.D.N.Y. 2019) (quoting *Interchange Fees I*, 986 F.Supp.2d at 217).

20.    As a result of the settlements reached in many of these class actions, merchants achieved the ability of charging a credit or debit card surcharge to their customers. However, the merchants' agreements with the credit and debit card companies continue to impose caps on these surcharges. Defendant's 5% surcharge violates these agreements.

21.    Defendant's practice is also contrary to the goal of the Dodd-Frank Wall Street Reform and Consumer Protection Act and the Durbin Amendment to ***protect consumers from***

4

*abusive financial services practices*. *See* Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111–203, 124 Stat. 1376, 1 (2010).

## II.    JURISDICTION AND VENUE

22.    This Court has jurisdiction over the claims stated herein as the matter in controversy exceeds $50,000.00, exclusive of costs, interest, and attorney's fees.

23.    This Court has personal jurisdiction over Defendant pursuant to Florida Statutes § 48.193(1)(a)(1) because Defendant conducts business in this State.

24.    Venue is proper in Orange County pursuant to Florida Statutes §§ 47.011, 47.051 because Defendant's unlawful conduct occurred here, and Defendant conducts business transactions in Orange County.

## III.    PARTIES

25.    Plaintiff Tatiana Eastman ("Plaintiff") is a natural person and resident of Osceola County, Florida, and is a citizen of the State of Florida.

26.    Defendant United Parks and Resorts, Inc. is a foreign corporation with its headquarters located in Orange County, Florida.

## IV. FACTS

27.    On or about June 4, 2024, Plaintiff visited SeaWorld Orlando, one of the parks owned and/or operated by United Parks & Resorts.

28.    On that day, Plaintiff made a purchase at one of the establishments within the park.

29.    Plaintiff paid for two items, at the price of $14.99 and $15.99 respectively.

30.    Upon submitting payment with her debit card, she was provided a receipt which showed the price of the items she purchased, plus a *5% surcharge* for a subtotal of $30.98. She was then charged an Orlando Sales Tax of $2.11, bringing her total amount due to $34.64.

5

31.    The surcharge is not disclosed at the point of sale or anywhere else in the park.

32.    At the bottom of the receipt, it is stated that the "5% surcharge covers increased operating costs."

33.    Plaintiff was *obligated to use a debit or credit card to pay* for her purchase because the park is cashless.

34.    Plaintiff was unaware she would be obligated to pay a 5% surcharge before she completed her payment because the surcharge is not displayed at the point of sale nor on Defendant's and its affiliates' website.

35.    The 5% surcharge imposed by Defendant exceeds the surcharge amounts allowed by the merchant's agreements of the major credit and debit card companies.[1]

36.    The 5% surcharge imposed by Defendant violates 12 CFR § 235.3 and the Durbin Amendment.

37.    Pursuant to 12 CFR § 235.3, an issuer cannot receive or charge an interchange transaction fee for an electronic debit transaction that is more than the sum of 21 cents and 5 basis points multiplied by the value of the transaction. In accordance with this legally mandated formula, Defendant was not charged by the card's issuer more than $0.22549 to process Plaintiff's debit card transaction.

---

[1] Visa allows a maximum 3% surcharge for credit card transactions, prohibits any surcharge on debit card transactions, and mandates disclosure to the merchant's customers of the surcharge at the point of sale. https://usa.visa.com/content/dam/VCOM/global/support-legal/documents/merchant-surcharging-considerations-and-requirements.pdf (last viewed: June 25, 2024); MasterCard limits debit card surcharges in accordance with the Durbin Amendment, allows a Maximum Surcharge Cap of 4%, and mandates clear disclosure to the merchant's customers of the merchant's surcharging practices at the point of interaction. https://www.mastercard.us/en-us/business/overview/support/merchant-surcharge-rules.html (last viewed: June 25, 2024).

38.    Accordingly, a 5% surcharge amounting to $1.55 is unreasonable and resulted in the unjust enrichment of Defendant at the expense of Plaintiff and the other putative class members.

39.    Reasonable consumers, like Plaintiff, are misled regarding the costs of their purchases at Defendant's parks because they remain unaware of the surcharge until after completing their payment.

40.    Defendant's conduct is further deceptive because the surcharge is said to be due to increased operating costs. Seemingly, in lieu of raising its list prices and informing customers in advance of the actual costs they will incur, Defendant misleads consumers into believing its prices are lower, and it later profits by charging the additional 5% surcharge.

41.    All of Defendant's agents and affiliates within the parks owned and operated by Defendant charge the same unlawful, excessive, and deceptive surcharge to their customers.

42.    Most of Defendant's parks' websites contain information on their cashless policy but fail to advise regarding the 5% surcharge. *See, e.g.,* https://aquatica.com/orlando/cashless/; https://buschgardens.com/tampa/cashless/; https://unitedparks.com/our-brands/ (last viewed: June 25, 2024).

43.    Because the 5% surcharge Defendant charges is unlawful, Plaintiff and the class members are entitled to recover damages equivalent to the difference between the unlawful surcharge they were imposed, and the surcharge, if any, that Defendant could have legally charged.

## V.    Class Action Allegations

44.    Plaintiff brings this case as a class action on behalf of herself and all other persons similarly situated, pursuant to the provisions of Florida Rule of Civil Procedure 1.220.  The proposed Classes are defined as follows:

## Unjust Enrichment Class

All natural persons in the United States who made a purchase at one of Defendant's parks using a credit or debit card and were charged an undisclosed 5% surcharge at the time of completing payment for goods or services.

## FDUPTA Subclass

All natural persons residing in Florida who made a purchase at one of Defendant's parks using a credit or debit card and were charged an undisclosed 5% surcharge at the time of completing payment for goods or services.

45.    Expressly excluded from the Class are:

(a)    Any Judge or Magistrate Judge presiding over this action and members of their immediate families;

(b)    Defendant and any entity in which Defendant has a controlling interest, or which has a controlling interest in Defendant and its legal representatives, assigns and successors; and

(c)    All persons who properly execute and file a timely request for exclusion from the Class.

46.    Plaintiff reserves the right to amend the Class definition at the Class Certification stage of the litigation if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

47.    **Certification Is Proper**. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

48.    **Numerosity**. The members of the Class are so numerous that individual joinder of all Class members is impracticable. Defendant, throughout each of its locations, prints numerous

8

credit and debit card receipts each day and it charges the unlawful 5% surcharge on each of the transactions. The class period is four years. Therefore, the class is sufficiently numerous such that individual joinder of all members is impractical. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court by avoiding a multiplicity of identical suits.

49.     **Commonality and Predominance**. This action involves common questions of law and fact,[2] which predominate over any questions affecting individual Class members, including, without limitation:

a.  Whether, within the four (4) years prior to the filing of this Complaint, Defendant and/or its affiliates and agents imposed a 5% surcharge to customers who made a purchase at one of Defendant's amusement parks;

b.  Whether Defendant failed to disclose the surcharge;

c.  Whether Defendant's surcharge is deceptive;

---

[2] Although actual damages may vary among class members, this does not defeat predominance. *See, e.g., Gilbert v. Bioplus Specialty Pharmacy Servs.*, LLC, No. 6:21-CV-2158-RBD-DCI, 2024 WL 1464083, at *12–13 (M.D. Fla. Feb. 1, 2024), *report and recommendation adopted*, No. 6:21-CV-2158-RBD-DCI, 2024 WL 939595 (M.D. Fla. Mar. 5, 2024) (finding predominance in a FDUPTA case where the plaintiff asserted two groups of class members, one whose SSN were affected by a data breach, and one whose SSN was not affected by the data breach. The Court found that "there [was] no evidence to suggest thus far that individual issues would predominate in this action"); *see also Sosa v. Safeway Premium Fin. Co.*, 73 So. 3d 91, 113 (Fla. 2011) ("Further bolstering the predominance of the class claims here is that any minor variance in factual circumstances would be with regard to the issue of damages and not liability, which does not preclude class certification."); *Fla. Dep't of Agric. & Consumer Servs. v. Lopez-Brignoni*, 114 So. 3d 1138, 1143 (Fla. Dist. Ct. App. 2012) ("As the trial court found in its order granting the amended motion for class certification, although the amount of compensation for the replacement cost of the destroyed trees may differ among homeowners, the methodology for establishing compensation will result in a uniform result, thus avoiding the necessity of holding individual damage hearings.") (internal citations omitted); *Concert Plantation, LLC v. Dorso*, 352 So. 3d 914, 917 (Fla. Dist. Ct. App. 2022) (possible variation in the damages among class members is not a basis to reject certification.).

9

    d. Whether Defendant's surcharge violates the Durbin amendment and the merchant's agreements with the credit and debit card companies;

    e. Whether Defendant was unjustly enriched by the subject surcharge; and

    f. The extent of actual damages for Defendant's violations.

50. **Typicality**. Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were injured through the uniform prohibited conduct described above.

51. **Adequacy of Representation**. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the other Class members she seeks to represent; she has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously.

52. **Superiority**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice. The Class can be identified through Defendant's records or Defendant's agents' records. Furthermore, the damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, individualized litigation creates a potential for inconsistent or

10

contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.    CAUSES OF ACTION

### COUNT I
### Violation of the Florida Deceptive and Unfair Practice Act
### Fla. Stat. § 501.201, *et seq.*
### (FDUPTA Class)

53.    Plaintiff repeats and re-alleges the allegations set forth in the foregoing paragraphs, as if set forth fully herein.

54.    Section 501.204(1), Florida Statutes, declares unconscionable, unfair and deceptive acts or practices in the conduct of any trade or commerce to be unlawful.

55.    Defendant has engaged in a pattern of acts and practices designed to deceive and induce Florida consumers to make a purchase at Defendant's establishments while charging an unlawful and undisclosed 5% surcharge on credit and debit card transactions, when card payment is the sole payment method Defendant accepts.

56.    Defendant has failed to disclose the surcharge to consumers and has charged unlawful surcharges exceeding the amounts allowed by the card companies' merchant rules.

57.    Defendant's misleading business practices lead consumers to make purchases at its establishment believing they would be charged only for the prices shown on the menus, while charging them an unlawful and hidden 5% surcharge that is shown only after the customers complete their purchase.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and in favor of the class, and against Defendant for:

11

(a)    an order certifying this case to proceed as a class action;

(b)    an order awarding actual damages;

(c)    an order permanently enjoining Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, who receive actual notice of the injunction, from engaging in the acts and practices in violation of provisions of FDUTPA as specifically alleged above and any similar acts and practices relating to the relaying of false or misleading statements to consumers;

(d)    reasonable attorney's fees and costs; and

(e)    Such further relief as this Court may deem appropriate.

## COUNT II
### Unjust Enrichment

58.    Plaintiff repeats and re-alleges the allegations set forth in the foregoing paragraphs, as if set forth fully herein.

59.    Defendant unjustly collected and kept the 5% surcharge, while preventing its customers from submitting payment by any means other than debit and credit cards.

60.    Defendant failed to disclose that it charges and retains the 5% surcharge.

61.    Defendant charges a 5% surcharge on debit and credit card transactions that violates the merchant agreements with the major credit card companies and violates the Durbin Amendment and its implementing regulation 12 CFR § 235.3.[3]

---

[3] "Under Florida law, '[w]hether a statutory remedy is exclusive or merely cumulative depends upon the legislative intent as manifested in the language of the statute.'" *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1323 (S.D. Fla. 2017) (quoting *Thornber v. City of Ft. Walton Beach*, 568 So.2d 914, 918 (Fla. 1990). "Even where the legislature acts in a particular area, the common law remains in effect in that area

12

62.    By virtue of the foregoing, Defendant has been unjustly enriched and Defendant's retention of the 5% surcharge is unjust when it prevents customers from submitting payment by any other means than debit and credit cards and fails to disclose the surcharge.

63.    Plaintiff and class members are entitled to have the difference between the 5% surcharge Defendant unlawfully collects and the legally allowed surcharge returned to them.

64.    The deceptive 5% surcharge charged to Plaintiff and the class members is a source of substantial revenue and windfall profits to Defendant and unfairly enriches Defendant at the expense of Plaintiff and class members.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and in favor of the class, and against Defendant for:

(a)    an order certifying this case to proceed as a class action;

(b)    an order mandating restitution to Plaintiff and the class members of the difference between the 5% surcharge Defendant unlawfully collects and the legally allowed surcharge;

(c)    reasonable attorney's fees and costs; and

(d)    such further relief as this Court may deem appropriate.

## Jury Demand

Plaintiff hereby demands a trial by jury on all issues so triable.

---

unless the statute specifically says otherwise." *Id.* (quoting *State v. Ashley*, 701 So.2d 338, 341 (Fla.1997)).

Dated: July 18, 2024

Respectfully submitted,

**LEHRMAN LAW**

BY: */s/ Seth M. Lehrman*
Seth M. Lehrman (FBN: 132896)
951 Yamato Road, Suite 285
Boca Raton, FL 33431
Telephone: 754-778-9660
seth@lehrmanlaw.com

**SCOTT D. OWENS, P.A.**
Scott D. Owens (FBN: 597651)
3029 N. 29th Ave., Suite 209A
Hollywood, FL 33020
Telephone: 954-589-0588
scott@scottdowens.com

*Attorneys for Plaintiff and the proposed class*

14